UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| ORLANDINO DASILVA, ) | |
| ) | |
| Petitioner ) | |
| ) | |
| v. ) | Case No. 4:12-cv-02419-RBP-HGD |
| ) | |
| ERIC H. HOLDER, JR., et al., ) | |
| ) | |
| Respondents ) | |

## **REPORT AND RECOMMENDATION**

Petitioner, Orlandino DaSilva, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. He seeks release under an order of supervision pending deportation to Brazil.

### FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a native and citizen of Brazil. (Doc. 1, Petition, at ¶¶ 1, 11; Doc. 4-1, Decl. of Gerald Smith, ICE Assistant Field Office Director (Smith Decl.), at ¶ 6). He entered the United States on August 6, 2002. (Doc. 1 at ¶ 12).

On May 23, 2007, petitioner entered a guilty plea to the offenses of operating under the influence of alcohol and assault and battery on a police officer. (Smith Decl. at ¶ 3). The plea was entered without a finding of guilt. (*Id.*; Doc. 6, Petitioner's Reply, at ¶ 2). On October 9, 2007, petitioner was arrested and charged

with disorderly conduct and resisting arrest. (Smith Decl. at ¶ 4). However, it was continued without a finding of guilt. (*Id.*).

Petitioner was taken into Immigration and Customs Enforcement (ICE) custody pursuant to a warrant of arrest on July 11, 2011. (Id. at ¶ 5). He was issued a Notice to Appear by ICE, and charged with inadmissibility under INA § 212(a)(6)(A)(i) (8 U.S.C. § 1182(a)(6)(A)(i))[1] and held without bond. (*Id.*). On November 10, 2011, an Immigration Judge ordered that petitioner be removed to Brazil. (*Id.* at ¶ 6). Because petitioner did not reserve his right to appeal, the Order of Removal became administratively final on that date. (*Id.*).

ICE first requested a travel document from the Consulate of Brazil on November 23, 2011. (*Id.* at ¶ 7). On December 15, 2011, and June 12, 2012, petitioner was interviewed by the Consulate of Brazil. However, the government of Brazil cannot issue a travel document because petitioner refuses to sign for it and has so advised the Consulate. (*Id.* at ¶ 8).

On January 24, 2012, May 30, 2012, and July 13, 2012, petitioner was served with a Notice of Failure to Comply (Form I-229(a), Warning for Failure to Depart),

---

[1] This statute provides: "An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."

in accordance with 8 C.F.R. § 241.4(g)(5) (2011).[2]  He was advised of his duty to cooperate with securing of the travel documents, but he refuses to sign for the travel document.  (*Id.* at ¶¶ 8, 9).

Petitioner's Post Order Custody Review was conducted on February 16, 2012. On February 28, 2012, petitioner was served with the decision to continue his

---

[2] This regulation provides:

*Alien's compliance and cooperation.*
(i) Release will be denied and the alien may remain in detention if the alien fails or refuses to make timely application in good faith for travel documents necessary to the alien's departure or conspires or acts to prevent the alien's removal.  The detention provisions of section 241(a)(2) of the Act will continue to apply, including provisions that mandate detention of certain criminal and terrorist aliens.

(ii) The Service shall serve the alien with a Notice of Failure to Comply, which shall advise the alien of the following: the provisions of sections 241(a)(1)(C) (extension of removal period) and 243(a) of the Act (criminal penalties related to removal); the circumstances demonstrating his or her failure to comply with the requirements of section 241(a)(1)(C) of the Act; and an explanation of the necessary steps that the alien must take in order to comply with the statutory requirements.

(iii) The Service shall advise the alien that the Notice of Failure to Comply shall have the effect of extending the removal period as provided by law, if the removal period has not yet expired, and that the Service is not obligated to complete its scheduled custody reviews under this section until the alien has demonstrated compliance with the statutory obligations.

(iv) The fact that the Service does not provide a Notice of Failure to Comply, within the 90-day removal period, to an alien who has failed to comply with the requirements of section 241(a)(1)(C) of the Act, shall not have the effect of excusing the alien's conduct.

detention, based on his failure to comply with obtaining a travel document. (*Id.* at ¶¶ 10, 11). Under INA § 241(a)(1)(C), petitioner's removal period has been extended because of his failure to comply. The United States and Brazil have an extradition treaty **[cite to USCS]**, and ICE expects to obtain a travel document for petitioner in the reasonably foreseeable future, as soon as he cooperates. (*Id.* at ¶ 12).

## DISCUSSION

With respect to detention, release, and removal of aliens ordered removed, 8 U.S.C. § 1231(a) gives the Attorney General a 90-day period to accomplish the removal of an alien following the entry of a final order of deportation. Title 8 U.S.C. § 1231(a)(1) provides in relevant part:

> **(a) Detention, release, and removal of aliens ordered removed**
> **(1) Removal period**
> **(A) In general**
> Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").
> **(B) Beginning of period**
> The removal period begins on the latest of the following:
> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order . . .
> **(C) Suspension of period**
> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely

> application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

8 U.S.C. § 1231(a)(1).

Under 8 U.S.C. §1231(a)(6), where removal arrangements cannot be finalized within the 90-day period, an alien ordered removed who is: (1) "inadmissible," or (2) "removable" for violating status requirements, entry conditions, or the criminal law, or for reasons of security or foreign policy, or (3) determined by the Attorney General to be a risk to the community or unlikely to comply with the removal order, "may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision."

The Supreme Court held in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), that § 1231(a) authorizes detention for a period reasonably necessary to accomplish the alien's removal. *Id.* at 699-700, 121 S.Ct. at 2504. The court found that six months is a presumptively reasonable period of time to allow the government to remove an alien after the removal period has commenced. *Id.* at 701, 121 S.Ct. at 2505. The Supreme Court further stated that:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what

counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

The decision in this case is governed by 8 U.S.C. § 1231(a)(a)(C). The presumptive removal period has not begun to run, or is suspended, because DaSilva is "fail[ing] or refus[ing] to make timely application in good faith for travel or other documents necessary to [his] departure [and is] act[ing] to prevent [his] removal." Petitioner argues that "the only reason [he] refuses to sign for a travel document is because he can barely speak English and he cannot read the English language so he has no idea what it is he would be signing . . . and ICE refuses to provide an interpreter." (Doc. 6 at ¶ 5). However, it is telling that petitioner acknowledges he has been presented with a form to obtain a travel document but simply refused to sign it, does not deny that he was interviewed by the Consulate of Brazil, and obviously has enough command of the English language or someone to interpret for him that he has signed and submitted the instant habeas corpus petition. Therefore, his reliance on this argument to avoid the consequences of not cooperating in obtaining a travel document is unavailing. Because petitioner is failing to cooperate, the six-month

period described in *Zadvydas* has not begun to run and petitioner is not entitled to release under supervision. *See Oladokun v. U.S. Atty. Gen.*, 479 Fed.App'x 895 (11th Cir. 2012) (alien who stopped signing Form I-229 thwarted his removal, thereby tolling six-month period); *Mytyuk v. Young*, 347 Fed.App'x 50 (5th Cir. 2009) (detention period lawfully extended for alien who refused to make a timely application in good faith for travel documents).

Even had the six-month period elapsed, petitioner has not shown that he is entitled to habeas relief. In *Akinwale v. Ashcroft*, 287 F.3d 1050 (11th Cir. 2002), a resident alien who had been ordered deported to his home country of Nigeria alleged that his indefinite detention violated *Zadvydas*. Akinwale was taken into custody by the Immigration and Naturalization Service, and he filed a § 2241 habeas corpus petition four months later. The trial court found that Akinwale did not present any factual allegations indicating indefinite detention pending removal. The appellate court agreed, stating that at least six months must elapse between an alien's entry into INS custody and the filing of a habeas corpus petition alleging a *Zadvydas* violation:

> in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 1052.  Further, it found that Akinwale had not presented any facts indicating that the INS was incapable of executing his removal to Nigeria, resulting in an indefinite detention.

As in Akinwale, DaSilva has failed to "provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  The United States and Brazil have an extradition treaty, effective December 17, 1964.  *Treaty of Extradition Between the United States of America and the United States of Brazil*, Jan. 13, 1961 and June 18, 1962, U.S.-Brazil, 15 U.S.T. 2093.  All that remains to accomplish petitioner's removal to Brazil is his signature to obtain a travel document.  "The risk of indefinite detention that motivated the Supreme Court's statutory interpretation in *Zadvydas* does not exist when an alien is the cause of his own detention.  Unlike the aliens in *Zadvydas*, [petitioner] has the 'keys [to his freedom] in his pocket' and could likely effectuate his removal by providing the information requested. . . ."  *Pelich v. I.N.S.*, 329 F.3d 1057, 1060 (9th Cir. 2003) (citing *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (finding, pre-*Zadvydas*, that a criminal alien who opted to "postpon[e] the inevitable" by delaying his removal proceeding "has no constitutional right to remain at large during the ensuing delay")).

Based on the foregoing, it is RECOMMENDED that the petition for writ of habeas corpus be DISMISSED WITHOUT PREJUDICE as premature.

### NOTICE OF RIGHT TO OBJECT

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court. Any objections to the failure of the magistrate judge to address any contention raised in the complaint or petition also must be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (*en banc*). In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. Objections not meeting this specificity requirement will not be considered by a district judge. IT IS NOT NECESSARY FOR PLAINTIFF OR PETITIONER TO REPEAT HIS LEGAL ARGUMENTS. AS TO THE FACTS, IF PLAINTIFF OR PETITIONER DOES RESPOND, HE

SHOULD LIMIT HIMSELF TO ADDRESSING THE STATEMENTS OF FACT CONTAINED IN THE REPORT AND RECOMMENDATION TO WHICH HE OBJECTS. HE ALSO SHOULD OBJECT TO ANY FACTS NOT INCLUDED IN THE REPORT AND RECOMMENDATION WHICH HE CONTENDS SHOULD HAVE BEEN INCLUDED. THE FILING OF OBJECTIONS IS NOT A PROPER VEHICLE TO MAKE NEW ALLEGATIONS OR PRESENT ADDITIONAL EVIDENCE. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge.

DONE this 15th day of August, 2013.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE